**19**

**LAW OFFICES OF GABRIEL LIBERMAN, APC**
Gabriel E. Liberman (SBN 303010)
Gabe@4851111.com
1545 River Park Drive, Suite 530
Sacramento, California 95815
Telephone:     (916) 485-1111
Facsimile:     (916) 485-1111

Attorney for CAPSITY, INC.

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
SACRAMENTO DIVISION

| | |
|---|---|
| **In re:** | Case No.:  2023-23940-B-11<br>Chapter:  11<br>DCN:  GEL-5 |
| CAPSITY, INC. | |
| | **DEBTOR'S PLAN OF REORGANIZATION, DATED MAY 14, 2024** |
| Debtor. | Judge:   Hon. Christopher D. Jaime |

CAPSITY, INC., the debtor and debtor-in-possession (the "Debtor") is the proponent of this Plan of Reorganization dated May 14, 2024 (the "Plan") filed in the above-captioned Chapter 11 case.

**BACKGROUND:**

   **A.  Description and History of the Debtor's Business.**

   Debtor is a closely held corporation owned wholly by Dmitri Godamunne. Debtor was established in 2008 and operates as a coworking office space business. Debtor supports local businesses, entrepreneurs, contractors, and non-profit organizations and provides flexible and alternative office space and lease options. Debtor operates from its two commercial properties commonly known as 1830 &1922 Del Paso Blvd, Sacramento, CA 95815 (the "Del Paso Property") and 3810 Broadway, Sacramento, CA 95817 (the "Broadway Property").

The Debtor has managed its business and affairs as a debtor-in-possession throughout this bankruptcy proceeding. Dmitri Godamunne will remain the Debtor's sole shareholder, director and officer after the confirmation of the Plan.

## B. Liquidation Analysis

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation. A liquidation analysis is attached to the Plan as <u>Exhibit A</u>, which would provide zero distribution in a hypothetical chapter 7.

## C. Ability to Make Future Plan Payments and Operate Without Further Reorganization

The Debtor must also show that it will have enough cash over the life of the Plan to make the required Plan payments and operate the Debtor's business.

The Debtor has provided a 60-month projected financial budget as <u>Exhibit B</u>.

The Debtor's financial projections show that the Debtor will have disposable income for the 60-month period. The final Plan payment is expected to be paid at the end of the fifth year of the Effective Date.

Debtor's projections show 100% distribution to general unsecured creditors. As noted on the liquidation analysis accompanying the Plan as Exhibit "A".

The Plan Proponent's financial projections are based on average projections during the time which the Debtor has operated its business. These projections are subject to change based on its revenue from rental income.

**ARTICLE I**

**<u>SUMMARY</u>**

This Plan under chapter 11 of the Bankruptcy Code (the "Code") proposes to pay creditors of the Debtor from future disposable income for a period of 60 months received from Debtor's operations.

This Plan provides for six (6) classes; four (4) classes of secured non-priority general claims, one (1) class of general unsecured non-priority claims and one (1) class of Debtor's

equity holder's claim. This Plan also provides for the payment of administrative claims and priority claims.

All creditors and equity security holders should refer to Articles 3 through 6 of this Plan for information regarding the precise treatment of their claim. **Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.).**

## ARTICLE 2

## CLASSIFICATION OF CLAIMS AND INTERESTS

2.01    Class 1:        The claim of Evergreen Advantage, LLC, secured by a first priority security interest in Debtor's commercial real property commonly described as 3810 Broadway, Sacramento, CA 95817 [Sacramento County], to the extent allowed as a secured claim under §506 of the Code.

2.02    Class 2:        The claim of Allstar Financial, Inc., secured by a first priority security interest in Debtor's commercial real property commonly described as 1830 &1922 Del Paso Blvd, Sacramento, CA 95815 [Sacramento County], to the extent allowed as a secured claim under §506 of the Code.

2.03    Class 3:        The claim of Intertorg, LLC, secured by a second priority security interest in Debtor's commercial real property commonly described as 3810 Broadway, Sacramento, CA 95817 [Sacramento County], to the extent allowed as a secured claim under §506 of the Code.

2.04    Class 4:        The claim of Sacramento County Tax Collector to the extent allowed as a secured claim under §506 of the Code.

2.05    Class 5:        All non-priority unsecured claims allowed under §506 of the Code.

2.09    Class 6:        Debtor's Equity Security Holder, Dmitri Godamunne.

## ARTICLE 3

## TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS AND PRIORITY TAX CLAIMS

3.01    <u>Unclassified Claims</u>:  Under §1123(a)(1), administrative expense claims, and priority tax claims are not in classes.

3.02    <u>Administrative Expense Claims</u>:      Each holder of an administrative expense claim allowed under §503 of the Code will be paid in equal monthly installments on the first day of the month following the month in which the Effective Date of the Plan occurs, or upon such terms as may be agreed upon by the holder of the claim and the Debtor. Such monthly payments shall continue until the administrative expenses are paid in full and over a period not later than five (5) years after the Effective Date.

Debtor's counsel, Gabriel Liberman currently holds $10,000.00 in its client-trust account and estimates professional fees to exceed $25,000 upon the Effective Date. Debtor's projected budget proposes to pay court approved attorney fees in monthly payments over two years following the Effective Date.

3.03    <u>Priority Tax Claims</u>:   After holders of Allowed Administrative Claims are paid in full, Debtor shall remit equal monthly installments to holders of allowed priority tax claims under §507 of the Code will be paid in equal monthly installments on the first day of the month following the month in which the Effective Date of the Plan occurs, or upon such terms as may be agreed upon by the holder of the claim and the Debtor in accordance with §1129(a)(9)(c) of the Code. Such monthly payments shall continue until the priority claims are paid in full and over a period not later than four (4) years after the Effective Date.

| Claimant | Proof of claim No. | Priority tax claim amount |
|---|---|---|
| Internal Revenue Service | 3 | $2,400.00 |
| Franchise Tax Board | 2 | $2,719.83 |

For purposes of the Plan, the claims of an allowed priority tax claim include interest at the rate of 8% per annum. See Exhibit B for payment schedule.

3.04    <u>Statutory Fees</u>:      All fees required to paid under 28 U.S.C. §1930 that are owed on or before the effective date of this Plan have been paid or will be paid on the Effective Date.

# ARTICLE 4

## TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

| CLASS | IMPAIRMENT | TREATMENT |
|---|---|---|
| Class 1<br><br>The Evergreen Advantage, LLC | Impaired, entitled to vote | Under this plan the Debtor shall continue to make mortgage payments to the Class 1 claimant in accordance with the pre-petition terms of the mortgage agreement, except as amended below:<br><br>The foregoing provisions shall be deemed to be modifications to the loan documents. Except as expressly modified herein, the prepetition loan documents relating to loan remain in full force and effect.  In the event of a default under such Loan, as modified herein, Claimant may exercise all of its remedies available under applicable state law.  Likewise, Debtors maintain all rights and protections of California law.<br><br>Monthly payment: **$16,125.00**<br>Payment due by 10th of each month<br>Maturity Date extended to July 1, 2026<br>No prepayment penalty |
| Class 2<br><br>Allstar Financial, Inc. | Impaired, entitled to vote | Under this plan the Debtor shall continue to make mortgage payments to the Class 2 claimant in accordance with the pre-petition terms of the mortgage agreement, except as amended below:<br><br>The foregoing provisions shall be deemed to be modifications to the loan documents. Except as expressly modified herein, the prepetition loan documents relating to loan remain in full force and effect.  In the event of a default under such Loan, as modified herein, Claimant may exercise all of its remedies available under applicable state law.  Likewise, Debtors maintain all rights and protections of California law.<br><br>Monthly payment: **$9,243.75**<br>Payment due by 10th of each month<br>Maturity Date extended to April 1, 2026<br>No prepayment penalty |

| Class 3<br><br>Intertorg, LLC | Impaired, entitled to vote | Under this plan the Debtor shall continue to make mortgage payments to the Class 3 claimant in accordance with the pre-petition terms of the mortgage agreement, except as amended below:<br><br>The foregoing provisions shall be deemed to be modifications to the loan documents. Except as expressly modified herein, the prepetition loan documents relating to loan remain in full force and effect.  In the event of a default under such Loan, as modified herein, Claimant may exercise all of its remedies available under applicable state law.  Likewise, Debtors maintain all rights and protections of California law.<br><br>Monthly payment: **$500.00**<br>Payment due by 10th of each month<br>Maturity Date extended to April 1, 2026<br>No prepayment penalty |
| Class 4<br><br>Sacramento County Tax Collector | Impaired, entitled to vote | Under this plan the Debtor shall make monthly payments to the Class 4 claimant at 18.00% interest per annum on the total claim amount of $53,438.22.<br><br>See **Exhibit A** – Post-confirmation budget for plan payment schedule. |

### A.  Classes of General Unsecured Claims

| **CLASS** | **IMPAIRMENT** | **TREATMENT** |
|---|---|---|
| Class 5<br><br>General Unsecured Nonpriority Claims | Impaired | The Debtor estimates that the total amount of general unsecured claims to be approximately $35,929.51<br><br>The Debtor shall pay pro rata share of 100% of allowed unsecured claims over five (5) years from the Effective Date of the Plan.<br><br>First payment will commence after all administrative claims have been paid in full. Debtor estimates payments will begin 180 days after the Effective Date. Payments will be made in equal monthly payments by the 15th of each |

| | | month. A distribution schedule is attached hereto as **Exhibit B.**<br><br>In the event a claimant's scheduled monthly distribution under the Plan is less than $10.00, Debtor reserves the right to disburse the total scheduled distribution under the Plan to such claimant in one lump sum payment within the first 12 months following the Effective Date. |
|---|---|---|

***B. Classes of Equity Interests***

| Class 6<br><br>**Equity Interest Holders of the Debtor in the Property of the Estate.**<br><br>Current holders of equity are as follows:<br>Dmitri Godamunne | Unimpaired | Current Equity Interest Holders of the Debtor shall retain their full interest in the equity that they hold. |
|---|---|---|

## ARTICLE 5

## ALLOWANCE AND DISALLOWANCE OF CLAIMS

5.01    <u>Disputed Claim</u>:        A disputed claim is a claim that has not been allowed or disallowed by a final non-appealable order, and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

5.02    <u>Delay of Distribution on a Disputed Claim</u>:  No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order.

5.03    <u>Settlement of disputed claims</u>:        The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure. For administrative convenience, the Debtor will have authority to settle any disputed claim in an Allowed Claim of less than $15,000.00 without approval of the Bankruptcy Court.

## ARTICLE 6

### PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES

6.01    Assumed Executory Contracts and Unexpired Leases:

(a) The Debtor assumes the following executory contracts and unexpired leases: None.

(b) Except for executory contracts and unexpired leases that have been assumed, and if applicable assigned, before the Effective Date or under section 6.01(a) of this Plan, or that are the subject of a pending motion to assume, and if applicable assign, the Debtor will be conclusively deemed to have rejected all executory contracts and unexpired leases as of the Effective Date. A proof of claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than thirty (30) days after the date of the order confirming this Plan.

## ARTICLE 7

### MEANS FOR IMPLEMENTATION OF THE PLAN

7.01    Means and Implementation of the Plan: The Debtor shall fund the Plan with the proceeds and profits from operating its coworking office space business to the general public.

7.02    Re-vesting of Property of the Estate: On the Effective Date, all assets of the Debtor's estate, including all real and personal property, all causes of action, interests, claims, choses in action, and rights under any contracts (executory or otherwise), against any person will re-vest and be transferred to the post-Effective Date Debtor. However, if this Plan is confirmed pursuant to 11 U.S.C. §1191(b) the assets of the estate, including property acquired and earnings received after Plan confirmation will remain property of the estate until the Debtor receives a discharge.

7.03    Continued Corporate Existence of Debtor: From and after the Effective Date, the Debtor shall exist and continue to exist as a separate legal entity, with all powers in accordance with the laws of the State of California and shall be governed by the pre-Petition Date operating agreement. The Debtor shall have all of the powers of such a legal entity under applicable law and without prejudice to any right to alter or terminate such existence (whether by merger, conversion, dissolution or otherwise) under applicable law. On and after the Effective Date, the

Debtor may freely enter into contracts, operate its business and may use, acquire, and dispose of property and compromise, or settle any post-Effective Date claims without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan or the Confirmation Order.

      7.04      <u>Post-Effective Date Management and Professionals</u>: In accordance with section 1129(a)(5) of the Bankruptcy Code, from and after the Effective Date, the initial officers and directors of the Debtor will be as follows:

| Name | Position |
|------|----------|
| Dmitri Godamunne | President and CEO |

      The Debtor may retain Gabriel Liberman and Law Offices of Gabriel Liberman APC as counsel after the Confirmation Date to assist the Debtor in any bankruptcy-related matters and such other matters as are appropriate. Law Offices of Gabriel Liberman will continue to charge its customary rates as agreed upon from time to time by the Debtor and the Law Offices of Gabriel Liberman but will not be required to submit fee applications or otherwise be employed under the Bankruptcy Code, and the Debtor may pay Law Offices of Gabriel Liberman without notice, a hearing, or approval by the Bankruptcy Court. After the Confirmation Date, the Debtor will hire, fire, retain, or employ such other professionals as it deems advisable in the reasonable exercise of its business judgment without the need to seek approval of the Bankruptcy Court. The Debtor will compensate its professionals for any services provided after the Confirmation Date in the ordinary course of its business without the need for Bankruptcy Court approval. General unsecured creditors will receive monthly or quarterly pro rata distributions after the allowance and payment of Allowed Administrative Claims.

**ARTICLE 8**

**<u>GENERAL PROVISIONS</u>**

8.01   <u>Definitions and Rules of Construction</u>.      The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan, and they are supplemented by the following definitions:

1. "**Administrative Claim**" means any Claim for any cost or expense of administration in connection with the Chapter 11 case, in accordance with section 503(b) of the Code, including, without limitation:

(a) The actual, necessary costs and expenses of preserving the Debtor's bankruptcy estate and of operating the Debtor's business, other than Claims which, by their express terms, are not due or payable by the Effective Date;

(b) The full amount of all Claims for allowance of compensation for legal or other professional services or reimbursement of costs and expenses under section 330 or section 503(b) of the Code, or otherwise allowed by the Bankruptcy Court;

(c) All fees and charges assessed against the Debtor's estate under Chapter 123 of Title 28, United States Code; and

(d) Expenses incurred by the Debtor in connection with this case, including appraisal fees and attorney fees and expenses incurred in obtaining a confirmed plan of reorganization, in such amount as the Court shall allow; such Claims shall be deemed administrative expenses pursuant to section 503(b) of the Code for the purposes of this Plan.

2. "**Allowed Administrative Claim**" means an Administrative Claim that is an Allowed Claim.

3. "**Allowed Claim**" means any Claim in the amount and classification set forth in a proof of claim filed with the Court within the time fixed by the Court, or in the absence of such filing, as set forth in the Debtor's Schedules of Liabilities filed in the Case, unless the Claim was listed in the schedules as disputed, unknown in amount, contingent, or unliquidated, in any event as to which no objection to the allowance thereof has been made within the applicable period, if any, of limitations in the Plan or the Confirmation Order, or as to which any such objection has been determined by an order of the Court providing for allowance. Multiple proofs of claim of the same Class filed by any party shall be aggregated and shall constitute a single Claim. The allowance of Administrative Claims shall be governed by the applicable provisions of the Code.

4. "**Allowed Interest**" means the Interest held by a shareholder of record of the Debtor as to which no objection to the allowance thereof has been interposed within the applicable period,

if any, of limitations fixed in the Plan or the Confirmation Order, or as to which any such objection has been determined by an order or judgment of the Court.

5. "**Allowed Secured Claim**" means an Allowed Claim secured by a lien or a perfected security interest in one or more parcels of real property and/or items of personal property in which the estate has an interest, or which is subject to setoff under Section 553 of the Code, in an amount equal to the lesser of the Allowed Claim of that creditor or the value of the Claimant's interest in the property, as determined by the Court pursuant to section 506 of the Code, the interest of such Allowed Secured Claim in the Estate's interest in such property or the extent of the amount subject to setoff, as the case may be, unless the holder of the claim made an election pursuant to section 1111(b) of the Code, in which event the Allowed Secured Claim shall be equal to the Allowed Claim.

6. "**Allowed Unsecured Claim**" means an Unsecured Claim that is an Allowed Claim.

7. "**Case**" means the Chapter 11 case of the Debtor, designated as Case No. 2023-23940-B-11, pending before the Court.

8. "**Claim**" means any right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured, as defined in section 101(5) of the Code.

9. "**Claims Bar Date**" shall mean March 6, 2024, which is the date set by the Court for non-governmental creditors to file a Proof of Claim and April 30, 2024 for governmental creditors to file a Proof of Claim.

10. "**Code**" or "**Bankruptcy Code**" mean Title 11 of the United States Code, 11 U.S.C. sections 101–1330, as amended.

11. "**Confirmation Order**" means that order which provides for confirmation of this Plan at or after hearing pursuant to section 1129 of the Code.

12. "**Court**" and "**Bankruptcy Court**" mean the United States Bankruptcy Court for the Eastern District of California (or such other court as may have jurisdiction over this Chapter 11 case) and, with respect to any particular proceeding arising under, in, or relating to this Chapter 11 case, any other court which may have jurisdiction over such proceeding.

13. "**Debt**" means liability on a Claim.

14. "**Disputed Payment Reserve**" means the funds held by any Plan Disbursing Agent for payment of claims that are not allowed claims as of the Effective Date, but which funds will

be used to pay such claims after any dispute is resolved by final order or agreement of the parties.

15. "**Effective Date**" means that date on which the order confirming this Plan final and nonappealable.

16. "**Estate**" means the bankruptcy estate created upon commencement of the Case, pursuant to section 541(a) of the Code.

17. "**Petition Date**" means November 2, 2023, which is the date the Debtor filed its Chapter 11 petition.

18. "**Plan**" means this Plan of Reorganization proposed by the Debtor, including any amendment or modification made in accordance with the Code.

8.02   <u>Effective Date of Plan</u>.        The effective date of this Plan is the first business day following the date, that is 14 days after the entry of the confirmation order. If, however, a stay of the confirmation order is in effect on that date, the effective date will be the first business day after the date on which the stay expires or is otherwise terminated.

8.03   <u>Severability</u>.   If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

8.04   <u>Binding Effect</u>.        The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

8.05   <u>Captions</u>.        The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

8.06   <u>Controlling Effect</u>.        Unless a rule of law or procedure is supplied by federal law (including or the Federal Rules of Bankruptcy Procedure), the laws of the State of California govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as other wise provided in this Plan.

8.07   <u>Corporate Governance</u>.        The Debtor is a corporation and pursuant to §1123(a)(6), the Debtor is prohibited from the issuance of nonvoting equity securities, and providing, as to the several classes of securities possessing voting power, an appropriate distribution of such power among such classes, including, the case of any class of equity securities having a preference over another class of equity securities with respect to dividends,

adequate provisions for the election of directors representing such preferred class in the event of default in the payment of such dividends.

      8.08   <u>Retention of Jurisdiction</u>.     The Bankruptcy Court will retain and have exclusive jurisdiction over any matter arising under the Bankruptcy Code arising in or related to the Debtor's chapter 11 case or the Plan, or that relates to any of the following:

1) consistent with Article VI, hereof, to resolve any matter related to the assumption or rejection of any executory contract or unexpired lease to which a Debtor is a party or with respect to which a Debtor may be liable and to hear and determine any Claim arising therefrom;

2) to enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan;

3) to determine all motions, adversary proceedings, applications, and contested or litigated matters that may be pending on the Effective Date or that, pursuant to the Plan, may be instituted by the Debtor prior to or after the Effective Date, including resolution of all Causes of Action, including Avoidance Actions;

4) to ensure that distributions to holders of Allowed Claims are accomplished as provided in the Plan;

5) to hear and determine any timely objection to a Claim or Proof of Claim;

6) to enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, reversed, or vacated;

7) to issue such orders in aid of execution of the Plan, to the extent authorized by section 1142 of the Bankruptcy Code;

8) to consider any modification of the Plan, to cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including the Confirmation Order;

9) to hear and determine all applications for awards of compensation for services rendered and reimbursement of expenses incurred by the Debtor's professionals;

10) to hear and determine disputes arising in connection with or relating to the Plan, or the interpretation, implementation, or enforcement of the Plan, or the extent of any Entity's obligations incurred in connection with or released under the Plan, unless such agreements or documents contain express enforcement or dispute resolution provisions to the contrary, in which case such provisions should govern;

11) to issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with consummation or enforcement of the Plan or the Global Settlement Agreement;

12) to determine any other matter that may arise in connection with or that is related to the Plan, the Confirmation Order or any contract, instrument, release, or other agreement or document created in connection therewith, unless such agreements or documents contain express enforcement or dispute resolution provisions, in which case, such provisions should govern;

13) to hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code (including, without limitation, any matter relating to tax refunds, and any request by the Debtor for an expedited determination of tax liability under section 505(b) of the Bankruptcy Code with respect to the Debtors, the Liquidating Trust, or the Liquidating Trust Claims Reserve, as applicable);

14) to hear any other matter or for any purpose specified in the Confirmation Order that is not inconsistent with the Bankruptcy Code; and

15) to enter a final decree closing the Chapter 11 Case;

Section 8.09     <u>Retention, Employment, and Compensation of Debtor's Professionals Post-Confirmation</u>: On and after the date the Confirmation Order is entered, the Debtor may, in the ordinary course of business and without further notice to or action, order, or approval of the Bankruptcy Court, employ and retain such professionals (including attorneys, accountants, financial advisors, and other professionals and including Debtor's professionals employed during the chapter 11 case) as it in its reasonable business judgment deems appropriate and pay such in cash the reasonable and documented fees and expenses of the professionals or other fees and expenses incurred by the Debtor, for all fees and expenses incurred after the entry of the Confirmation Order including fees and expenses related to implementation of the Plan and all fees of the U.S. Trustee. From and after the date the Confirmation Order is entered, any requirement that professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code or any order of the Bankruptcy Court entered before the date the Confirmation Order is entered governing the retention of, or compensation for services rendered by, professionals after the date the Confirmation Order is entered shall terminate, and the Debtor

may employ or pay any professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

      Section 8.12   <u>Unclaimed Distributions</u>: Any property to be distributed pursuant to the Plan, if not claimed by the distribute within one (1) year after the payment, shall be returned to the Debtor and become the property of the Debtor free and clear of any claims of any person.

## ARTICLE 9
## <u>DISCHARGE</u>

      9.01   <u>Discharge</u>.     Except as specifically provided in the Plan and/or the Confirmation Order, as of the Effective Date, Confirmation shall discharge the Debtor pursuant to section 1141(d)(1)(A) of the Bankruptcy Code from any and all Claims of any nature whatsoever, including any Claims and liabilities that arose prior to Confirmation, and all debts of the kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not (a) a Proof of Claim based on such Claim was filed or deemed filed under section 501 of the Bankruptcy Code, or such Claim was listed on the Schedules of the Debtors, (b) such Claim is or was Allowed under section 502 of the Bankruptcy Code, or (c) the holder of such Claim has voted on or accepted the Plan. Except as provided for in the Plan and/or the Confirmation Order, the rights that are provided in the Plan as of the Effective Date shall be in exchange for and in complete satisfaction, settlement and discharge of all Claims against, liens on, and interests in the Debtor or any Estate Property.

## ARTICLE 10
## <u>MODIFICATION OF PLAN</u>

      Section 10.01  <u>Modification of Plan</u>: Subject to the restrictions on modifications set forth in section 1193 of the Bankruptcy Code, the Debtor reserves the right to alter, amend or modify the Plan before its substantial consummation. Prior to the Effective Date, the Debtor may make appropriate technical adjustments and modifications to the Plan without further order or approval of the Bankruptcy Court. Holders of Claims that have accepted the Plan shall be deemed to have accepted the Plan, as amended, modified, or supplemented, if the proposed amendment, modification, or supplement does not materially and adversely change the treatment of the Claim of such holder; provided, however, that any holders of Claims who were deemed to accept the

Plan because such Claims were unimpaired shall continue to be deemed to accept the Plan only if, after giving effect to such amendment, modification, or supplement, the treatment of such Claims continues to be unimpaired.


Respectfully submitted,

                                        LAW OFFICES OF GABRIEL LIBERMAN, APC

Dated: May 14, 2024

                              By:     /s/    Gabriel E. Liberman
                                        Gabriel E. Liberman
                                        Attorney for Debtor
                                        1545 River Park Drive, Suite 530
                                        Sacramento, CA  95815
                                        Gabe@4851111.com



Dated: May 14, 2024              By:    /s/ Dmitri Godamunne
                                        Dmitri Godamunne
                                        President of Debtor

## LIQUIDATION ANALYSIS

### EXHIBIT "A"

| Asset | Value |
|---|---|
| a. Cash on hand | $ 5,000 |
| b. Commercial property: 1830 Del Paso Blvd | $ 2,315,000 |
| c. Commercial property: 3810 Broadway | $ 3,100,000 |
| d. Account Receivables | $ 26,052 |
| e. Office Furniture | $ 5,221 |
| f. Office Fixtures | $ 2,000 |
| | |
| **Total Assets** | **$ 5,453,273.00** |
| | |
| **Liabilities** | |
| Chapter 11 fees and administrative expenses: | $ 15,000.00 |
| Chapter 7 administrative fees (estimated) | $ 10,000.00 |
| Remainder | $ 5,428,273.00 |
| | |
| **Secured Priority claims** | |
| - NONE | $ - |
| Total Secured Priority | $ - |
| **Unsecured Priority claims** | |
| 1. Interal Revenue Service (POC 3) | $ 2,400.00 |
| 2. Franchise Tax Board (POC 2) | $ 2,719.83 |
| Total Unsecured Priority | $ 5,119.83 |
| **Secured Non-Priority Claims** | |
| 1. Evergreen Advantage, LLC | $ 2,378,879.00 |
| 2. Allstar Financial, Inc. | $ 1,533,133.00 |
| 3. Intertorg, LLC | $ 390,000.00 |
| 4. Sacramento County Tax Collector (Personal) | $ 3,438.22 |
| 5. Sacramento Czounty Tax Collector (Real Property) | $ 50,000.00 |
| Total Non-priority secured | $ 4,355,450.22 |
| | |
| **Total Priority and Non-Priority Claims** | **$ 4,360,570.05** |
| **Net Available to Unsecured Claims** | **$ 1,067,702.95** |
| Total General Unsecured Claims | $ 35,929.00 |
| | |
| **Pro-rata Distrbution in a hypothetical ch 7** | **100.00%** |

# EXHIBIT B

| Broadway Property | | | | | |
|---|---|---|---|---|---|
| **MONTHLY INCOME:** | **YEAR 1** | **YEAR 2** | **YEAR 3** | **YEAR 4** | **YEAR 5** |
| Rental Income: | $19,500 | $20,000 | $21,000 | $22,000 | $23,000 |
| | | | | | |
| **MONTHLY EXPENSES:** | | | | | |
| SMUD (Broadway) | $900.00 | $950.00 | $1,000.00 | $1,050.00 | $1,100.00 |
| PG&E (Broadway) | $25.00 | $25.00 | $25.00 | $25.00 | $25.00 |
| Bank fees | $30.00 | $35.00 | $35.00 | $40.00 | $45.00 |
| Insurance | $600 | $625 | $650 | $675 | $700 |
| **Total Expenses:** | **$1,555** | **$1,635** | **$1,710** | **$1,790** | **$1,870** |
| **Net Income:** | **$17,945** | **$18,365** | **$19,290** | **$20,210** | **$21,130** |
| | | | | | |
| **Del Paso Property** | | | | | |
| **INCOME:** | **YEAR 1** | **YEAR 2** | **YEAR 3** | **YEAR 4** | **YEAR 5** |
| **Rental Income:** | $13,500 | $14,000 | $14,500 | $15,000 | $15,500 |
| **EXPENSES:** | | | | | |
| SMUD (Del Paso) | $1,100 | $1,150 | $1,200 | $1,250 | $1,300 |
| Oak Park Association Dues | | | | | |
| Insurance | $900 | $950 | $1,000 | $1,050 | $1,100 |
| **Total Expenses:** | **$2,000** | **$2,100** | **$2,200** | **$2,300** | **$2,400** |
| **Net Income:** | **$11,500** | **$11,900** | **$12,300** | **$12,700** | **$13,100** |
| | | | | | |
| **Combined Net Income** | **$29,445** | **$30,265** | **$31,590** | **$32,910** | **$34,230** |
| | | | | | |
| **Ch 11 Plan Payments** | | | | | |
| Evergreen Advantage | $16,125 | $16,125 | $16,125 | $16,125 | $16,125 |
| Intertorg, LLC | $500 | $500 | $1,000 | $1,000 | $1,000 |
| Allstar Financial, Inc | $9,244 | $9,244 | $9,244 | $9,244 | $9,244 |
| Sacramento County Tax Collector | $0 | $1,557 | $1,557 | $1,557 | $1,577 |
| Internal Revenue Services | | | $75 | $75 | $75 |
| Franchise Tax Board | | | $85 | $85 | $85 |
| General Unsecured Claims | | $0 | $1,200 | $1,200 | $1,200 |
| Debtor's counsel | $1,000 | $1,000 | | | |
| Total Ch 11 Plan Payments | **$26,869** | **$28,426** | **$29,286** | **$29,286** | **$29,306** |
| **TOTAL NET** | **$2,576** | **$1,839** | **$2,304** | **$3,624** | **$4,924** |

| General Unsecured Class Distribution Table | | | |
|---|---|---|---|
| Exhibit "C" | | | |
| Creditor | POC No. | Amount | 60 months |
| Conitnential Commercial Group | | $ 3,100.00 | $ 52 |
| Golden Pacific Bankcorp | | $ 9,813.00 | $ 164 |
| Jeffrey Louie | | $ 5,000.00 | $ 83 |
| PG&E | 6 | $ 398.29 | $ 7 |
| SMUD | | $ 4,200.00 | $ 70 |
| Capital One, N.A. | 2 | $ 13,418.22 | $ 224 |
| | | | $ 599 |
| TOTAL | | $ 35,929.51 | |